1  Law Offices of Scott Z. Zimmermann
2  Scott Z. Zimmermann, Bar No. 78694
   szimm@zkcf.com
   601 S. Figueroa Street, Suite 2610
3  Los Angeles, California 90017
   Telephone: (213) 452-6509
4  Facsimile: (213) 622-2171

5  Payne & Fears LLP
   C. Darryl Cordero, Bar No. 126689
6  cdc@paynefears.com
   801 S. Figueroa Street, Suite 1150
7  Los Angeles, California 90017
   Telephone: (213) 439-9911
8  Facsimile: (213) 439-9922

9  Attorneys for Plaintiff Craftwood II, Inc.,
   dba Bay Hardware, and for all others
10 similarly situated

11
12          **UNITED STATES DISTRICT COURT**

13          **CENTRAL DISTRICT OF CALIFORNIA**

14               **SOUTHERN DIVISION**

15

16
   CRAFTWOOD II, INC., a California          Case No. SACV12-1710 DOC (ANx)
17 corporation, d/b/a as Bay Hardware,
   individually and on behalf of all others  **Class Action**
18 similarly situated,
                                             **Plaintiff's Memorandum of Points**
19              Plaintiffs,                   **and Authorities in Opposition to**
                                             **Defendant Tomy International, Inc.'s**
20         v.                                **Renewed Motion for Summary**
                                             **Judgment**
21 TOMY INTERNATIONAL, INC. (f/k/a
   RC2 Corporation), a Delaware              **[FED. R. CIV. P. 56]**
22 corporation; and DOES 1 through
   1,000, inclusive,                         Judge:  Hon. David O. Carter
23                                           Date:   July 8, 2013
                Defendants.                  Time:   8:30 A.M.
24                                           Crtrm.: 9D

25

26

27

28
                                                    SACV12-1710 DOC (ANx)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

**Table of Contents**

Page

Introduction ..................................................................................................... 1

Tomy's Massive Junk Faxing in Violation of the JFPA ................................. 2

Tomy's Attempted Pick-Off Tactic ................................................................ 4

Tomy Removes the Litigation to Federal Court ............................................. 5

Tomy's Summary Judgment Motion .............................................................. 6

Argument ......................................................................................................... 6

I.     As a Matter of Law, Tomy's Unaccepted Settlement Offer Did
       Not Moot this Dispute ..................................................................... 6

       A.     Tomy's Pick-Off Attempt Did Not Destroy Bay's Standing
              to Pursue Bay's Individual Claims .......................................... 7

       B.     Tomy's Pick-Off Attempt Did Not Defeat Bay's Standing
              Even if the Parties Had Settled Bay's Individual Claim ......... 10

              1.     Under *Roper* and *Geraghty* Bay has an independent
                     interest in class certification ...................................... 10

              2.     Tomy's pick-off attempt did not extinguish Bay's
                     independent interest in class certification ................. 12

       C.     *Genesis* Is Inapposite ........................................................... 16

II.    Tomy's Pick-Off Attempt Fails Because Tomy's "Offer" Was
       Incomplete and Ineffective ............................................................. 19

III.   Even if Tomy Had Eliminated the Court's Jurisdiction With an
       Unaccepted Pick-Off Offer, There Would Be No Legal Basis for
       Dismissal ......................................................................................... 22

Conclusion ....................................................................................................... 25

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

**Table of Authorities**

**Page**

C**ASES**

*Allen v. Wright*,
   468 U.S. 737, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) .................................... 9

*Already, LLC v. Nike, Inc.*,
   568 U.S.__, 133 S. Ct. 721, 184 L. Ed. 2d 553 (2013) .................................... 17

*ASARCO, Inc. v. Kadish*,
   490 U.S. 605, 109 S. Ct. 2037, 104 L. Ed. 2d 696 (1989) ............................... 24

*Boyle v. MTV Networks*,
   766 F. Supp. 809 (N.D. Cal. 1991) .......................................................... 23

*Brandon v. National RR. Passenger Corp. Amtrak*,
   No. CV 12-5796, 2013 WL 800265 (C.D. Cal. March 1, 2013) ...................... 14

*British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*,
   354 F.3d 120 (2d Cir. 2003) ..................................................................... 9

*Bromwell v. Michigan Mut. Ins. Co.*,
   115 F.3d 208 (3d Cir. 1997) .................................................................... 22

*Camreta v. Greene*,
   563 U.S.__, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011) ................................ 9

*Chafin v. Chafin*,
   568 U.S.__, 133 S. Ct. 1017, 185 L. Ed. 2d 1 (2013) ................................. 7, 17

*Coyne ex rel. Ohio v. American Tobacco Co.*,
   183 F.3d 488 (6th Cir. 1999) ................................................................... 23

*Damasco v. Clearwire Corp.*,
   662 F.3d 891 (7th Cir. 2011) ............................... 13, 14, 15, 19, 20, 24

*Damasco v. Clearwire Corp.*, No. 10 CV 3063, 2010 WL 3522950,
   (N.D. Ill. Sept. 2, 2010) ........................................................................ 21

*Deposity Guar. Nat'l Bank v. Roper*,
   445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980) ...................... 9, 10, 11

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-ii-                                                      SACV12-1710 DOC (ANx)

Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

*Doe v. Match.com,*
    789 F. Supp. 2d 1197 (C.D. Cal. 2011) ............................................................... 23

*ErieNet, Inc. v. Velocity Net, Inc.,*
    156 F.3d 513 (3d Cir. 1998) ................................................................................. 3

*Frazier v. Castle Ford, Ltd.,*
    430 Md. 144, 59 A.3d 59 A.3d 1016 (2013) ...................................................... 14

*Genesis Healthcare Corporation v. Symczyk,*
    __U.S.__, 133 S. Ct. 1523, __L. Ed. 2d__ (2013) ......................... 2, 7, 16, 17, 18

*Geraghty. United States Parole Comm'n v. Geraghty,*
    445 U.S. 388, 100 S. Ct. 1202,
    63 L. Ed. 2d 479 (1980) ............................... 11, 12, 13, 14, 15, 17, 25

*Gomez v. Campbell-Ewald Co.,*
    805 F. Supp. 2d 923 (C.D. Cal. 2011) ................................................................ 12

*Havens Realty Corp. v. Coleman,*
    455 U.S. 363, 102 S. Ct. 1114, 71 L. Ed. 2d 214 (1982) .................................. 20

*In re Palmdale Hills Prop.,*
    654 F.3d 868 (9th Cir. 2011) ................................................................................ 7

*International Primate Prot. League v. Administrators of Tulane Educ. Found.,*
    500 U.S. 72, 111 S. Ct. 1700, 114 L. Ed. 2d 134 (1991) .............................. 22, 23

*Knox v. Service Employees,*
    567 U.S.__, 132 S. Ct. 2277, 183 L. Ed. 2d 281 (2012) ....................... 7, 8, 9, 17

*La Sala v. American Savs. & Loan Ass'n,*
    5 Cal. 3d 864, 97 Cal. Rptr. 849 (1971) ............................................................ 24

*Langford v. Gates,*
    610 F. Supp. 120 (C.D. Cal. 1985) ..................................................................... 23

*Larner v. Los Angeles Doctors Hosp. Assocs., LP,*
    168 Cal. App. 4th 1291, 86 Cal. Rptr. 3d 324 (2008) ....................................... 24

*Los Angeles v. Lyons,*
    461 U.S. 95, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) .................................... 23

*Lucero v. Bureau of Collection Recovery, Inc.,*
    639 F.3d 1239 (10th Cir. 2011) ..................................................................... 12, 15

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-iii-

SACV12-1710 DOC (ANx)

Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

*Maine Ass'n of Interdependent Neighborhoods v. Commissioner*,
876 F.2d 1051 (1st Cir. 1989) .......................................................................... 23

*Mims v. Arrow Fin. Servs., LLC.,*
565 U.S.__, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012) ...................................... 2

*Minneapolis & St. Louis Ry. Co. v. Columbus Rolling Mill,*
119 U.S. 149, 7 S. Ct. 168, 30 L. Ed. 376 (1886) ............................................. 8

*Mirto v. American Int'l Group, Inc.,*
No. C-04-4998, 2005 WL 827093 (N.D. Cal. April 8, 2005) ..................... 23, 25

*Narouz v. Charter Commc'ns, LLC,*
591 F.3d 1261 (9th Cir. 2010) ................................................................... 11, 12

*Pitts v. Terrible Herbst, Inc.,*
653 F.3d 1081 (9th Cir. 2011) ................................................... 12, 13, 14, 16, 18

*Powell v. McCormack,*
395 U.S. 486, 89 S. Ct. 1944, 23 L. Ed. 2d 491 (1969) .................................... 18

*Ramirez v. Trans Union, LLC,*
No. 3:12-cv-00632 JSC, 2013 WL 1089748 (N.D. Cal. March 15, 2013) ....... 13

*Russell v. United States,*
661 F.3d 1371 (Fed. Cir. 2011) .................................................................. 12, 13

*Schaake v. Risk Mgmt. Alternatives, Inc.,*
203 F.R.D. 108 (S.D.N.Y. 2001) ...................................................................... 16

*Schmidt v. Red Rock Fin. Servs., LLC,*
No. 2:12-CV-1773JCM, 2013 WL 1501481 (D. Nev. April 10, 2013) ....... 13, 14

*Simmons v. United Mortgage & Loan, LLC,*
634 F.3d 754 (4th Cir. 2011) ............................................................................ 21

*Stanford v. Home Depot USA,*
No. 07cv2193-LAB, 2008 WL 7348181 (S.D. Cal. May 27, 2008) .................. 13

*Stern v. Superior Court,*
105 Cal. App. 4th 223, 129 Cal. Rptr. 2d 275 (2003) ....................................... 16

*Sullivan v. First Affiliated Secs.,*
813 F.2d 1368 (9th Cir. 1987) ............................................................................ 5

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-iv-

SACV12-1710 DOC (ANx)

Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

*University of S. Ala. v. American Tobacco Co.*,
    168 F.3d 405 (11th Cir. 1999) ........................................................... 22

*Vun Cannon v. Breed*,
    565 F.2d 1096 (9th Cir. 1977) ........................................................... 13

*Wallace v. Geico Gen. Ins. Co.*,
    183 Cal. App. 4th 1390, 108 Cal. Rptr. 3d 375 (2010) ..................... 24

*Watkins v. Wachovia Corp.*,
    172 Cal. App. 4th 1576, 92 Cal. Rptr. 3d 409 (2009) ....................... 24

*Weddington Prods., Inc. v. Flick*,
    60 Cal. App. 4th 793, 71 Cal. Rptr. 2d 265 (1998) ........................... 19

*Weiss v. Regal Collections*,
    385 F.3d 337 (3d Cir. 2004) .............................................................. 12

*Wheeler v. Travelers Ins. Co.*,
    22 F.3d 534 (3d Cir. 1994) ................................................................ 23

*Zinni v. ER Solutions, Inc.*,
    692 F.3d 1162 (11th Cir. 2012) ......................................................... 21

**STATUTES AND RULES**

28 U.S.C. Section 1441 ............................................................................. 5

28 U.S.C. Section 1447 ..................................................................... 22, 25

29 U.S.C. Section 201 ............................................................................ 16

47 U.S.C. § 227 ........................................................................ 2, 4, 8, 20

CAL. R. CT. 3.769(a), 3.770(a) ........................................................... 9, 22

**OTHER AUTHORITIES**

16 GEORGE VAIRO, MOORE'S FEDERAL PRACTICE § 107.14[1] (3d ed. 2013) ........... 5

General Accounting Office, "Weaknesses in Procedures and Performance
    Management Hinder Junk Fax Enforcement" ...................................... 3

-v-                                           SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

**Introduction**

Defendant Tomy International, Inc. ("Tomy"), by its own admission, executed a massive fax advertising program in which it blasted over 400,000 transmissions of 150 to 160 fax campaigns.  Plaintiff Craftwood II, Inc., d/b/a Bay Hardware ("Bay"), brought claims under the Junk Fax Prevention Act in Orange County Superior Court, seeking damages and injunctive relief for itself and a class of all others to whom Tomy sent its junk faxes.  Tomy then removed the case to federal court, expressly representing in its notice of removal that the Court had jurisdiction over Bay's claims.

In a direct about-face, Tomy now asserts that this Court *never had* jurisdiction over the dispute because *before* removal its lawyer sent a letter purportedly offering to settle Bay's individual claims.  The offer was not accepted by Bay, nor did the Superior Court approve any settlement.  Tomy nevertheless insists that its unaccepted offer somehow mooted Bay's individual claims and *ipso facto* mooted the class claims.  And even though the Superior Court has unquestioned jurisdiction to decide this dispute, Tomy asks the Court to dismiss the case, rather than remand it to Superior Court.

Tomy's sleight-of-hand does not work, for four independent reasons:

• The touchstone for mootness under Article III is whether a party retains a "concrete interest in the outcome of litigation."  Tomy's unaccepted offer did not destroy Bay's interest in the outcome.  Bay had the same interest after the offer than it did before—to prove Tomy's liability for the company's junk faxes and to obtain damages and injunctive relief.  And the offer did not render it impossible for the Court to provide meaningful relief, which is necessary to render a case moot.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

• Controlling Supreme Court decisions and Ninth Circuit authority establish that Bay has an independent interest in pursuing class certification. This interest is sufficient to establish an Article III "Case or Controversy" even if Bay's individual claims had been mooted. The Supreme Court's recent decision in *Genesis Healthcare* does not touch, let alone overrule, this long line of authorities.

• Even assuming for sake of argument that an *unaccepted* settlement offer could ever moot a plaintiff's claims, Tomy's was not such an offer. The "offer" purposefully ignored the class claims. And even in connection with Bay's individual claims, Tomy did not offer all of the relief demanded by Bay. In fact, it never actually offered *anything* by way of settlement; Tomy's offer was nothing more than one to continue litigating Bay's claims.

• Even in the unlikely event Tomy's pre-removal actions somehow mooted the case, the law is clear that the only remedy is a mandatory remand to the Superior Court, which has unquestioned jurisdiction. The Supreme Court has held that district courts have no discretion to dismiss rather than remand to state court.

**Tomy's Massive Junk Faxing in Violation of the JFPA**

On August 14, 2012, Bay filed this matter as a class action in Orange County Superior Court seeking damages and injunctive relief for Tomy's repeated violations of the federal anti-junk fax law, the Junk Fax Prevention Act of 2005 ("JFPA"), 47 U.S.C. § 227, and related regulations of the Federal Communications Commission. The JFPA amended the Telephone Consumer Protection Act of 1991 ("TCPA"), which Congress had passed in response to "[v]oluminous consumer complaints about the abuses of telephone technology." *Mims v. Arrow Fin. Servs., LLC.,* 565 U.S.__,

-2-                    SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

132 S. Ct. 740, 744, 181 L. Ed. 2d 881 (2012).[1]  What gives the law's prohibitions "teeth" is Congress's authorization of private class actions against mass junk fax blasters.  *ErieNet, Inc. v. Velocity Net, Inc.*, 156 F.3d 513, 515 (3d Cir. 1998).[2]

This is the paradigm case for which "teeth" are needed.  By its own admission, Tomy is an inveterate fax blaster.  In the past four years alone the company blasted over 410,000 transmissions of some 150-160 fax campaigns.  (Dkt. 45, Def.'s Resp. Court's Feb. 20, 2013, Disclosure Order, p. 1.)[3]

In its complaint, Bay seeks three categories of relief: class-related, damages, and injunctive.  The class-related relief includes (1) a judgment certifying a class of all subscribers of telephone numbers to whom Tomy sent junk faxes; (2) an order appointing Bay class representative and awarding Bay an incentive award for work in that role; and (3) an order for Bay's litigation costs and attorneys' fees to be "spread among the members of the Plaintiff Class in relation to the benefits received by the Plaintiff Class."  (Dkt. 1-1, Ex. A, Compl. pp. 14-15.)

Second, Bay seeks statutory damages in the amount of $500 for each Tomy violation of the act and FCC regulations, and trebling of those damages, "in an amount not less than $1,000,000."  (Compl. p. 14.)

---

[1]  Citizens have complained more to the FCC about junk faxes than any other issue except obscenity in radio and television.  *See, e.g.,* FCC Quarterly Report on Informal Consumer Inquiries and Complaints Release, Jan. 8, 2009.

[2]  This is because, among other things, the FCC has been able to take corrective action under the act on less than one tenth of one percent of complaints it receives.  *See, e.g.*, General Accounting Office, "Weaknesses in Procedures and Performance Management Hinder Junk Fax Enforcement," April 5, 2006.

[3]  Tomy's assertion that the case involves a single junk fax sent to Bay on January 17, 2011, attached as Exhibit 1 to the complaint (Def.'s Stmt. Unconverted Facts No. 1, p. 1), is demonstrably false.  The case seeks to remedy all 410,000 junk fax transmissions Tomy blasted within the past four years, not just Exhibit 1.  (Compl. ¶¶ 14, 22, 23.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-3-                                                    SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

Third, Bay seeks five separate items of injunctive relief: to enjoin Tomy from committing further violations of the act, to require Tomy to deliver records of facsimile advertisements, to conduct JFPA educational, training and monitoring programs and to give warnings about complying with the act to recipients of its faxes and visitors to its website.  (Compl. p. 15.)[4]

**Tomy's Attempted Pick-Off Tactic**

On August 28, only 14 days after the complaint was filed (and when the case remained in state court), Tomy attorney Bart Murphy sent a supposed settlement offer to Bay attorney Scott Zimmermann.  The "offer" is a standard Murphy ploy in junk fax cases to try to "pick-off" the named plaintiff and thereby attempt to avoid class-wide accountability for his clients' violations of federal law.  *E.g., Damasco v. Clearwire Corp.,* No. 10 CV 3063 (N.D. Ill.), Dkt. 11-2, filed May 19, 2010.

Murphy's letter made no attempt to settle Bay's class claims; it addressed only Bay's "individual" claims.  But even with respect to those claims, it did not commit to pay any outright sum certain.  It recited, instead, that Tomy would pay $1,500 for "each and every *facsimile ad* which Plaintiff was sent or received during the period August 14, 2008, to the present, which was sent by or on behalf of TOMY…, *in violation of the TCPA*."  (Murphy Decl. Ex. 1, p. 1 (emphasis supplied).)  The letter did not explain, however, when or how it would be determined how many facsimile ads Tomy sent, or more importantly, which of those were "in violation of the TCPA."

---

[4]    Bay concurrently served written discovery with the state court summons and complaint.  Tomy removed the case before the response deadline and subsequently refused to respond altogether because it was propounded in state court (thereby requiring Bay to reissue it as "federal" discovery).  Tomy has not responded to this discovery either.  (Zimmermann Decl. ¶¶ 6-8.)  Without discovery Bay is still not in a position to make a motion for class certification.

-4-                                    SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

The letter also offered to permit "an injunction prohibiting [Tomy] from sending *Plaintiff* any unsolicited facsimile ads which violate the TCPA and *any other injunctive relief which Plaintiff individually could obtain against TOMY in the lawsuit*." (Murphy Decl. Ex. 1, p. 1 (emphasis supplied).)  But Tomy did not offer to accept *any* of the injunctive relief demanded in the complaint, including the demand that Tomy not send any more junk faxes to *anyone* (not just Bay).  The letter also did not explain when or how it would be determined what "other injunctive relief" Bay "could obtain."

Bay promptly rejected the offer on September 5.  (Murphy Decl. Ex. 2.)  The rejection explained that Bay "filed the lawsuit was a class action seeking class-wide relief," and would "entertain class-wide resolution of the lawsuit after Plaintiff obtains sufficient discovery from defendant." (*Id.*)  At no time did Tomy seek approval of its offer from the Superior Court.  (Zimmermann Decl. ¶ 5.)

**Tomy Removes the Litigation to Federal Court**

On September 14, nine days after Bay rejected its pick-off offer, Tomy removed the lawsuit to federal court.  Tomy represented in its removal notice that the court "had subject matter jurisdiction." (Dkt. 1, Not. Removal filed Sept. 14, 2012, p. 1.)[5]

---

[5]     Tomy was entitled to remove only if the case satisfied Article III's "case or controversy" requirement *at the time of removal*.  It is well established that "[a] suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally." *Sullivan v. First Affiliated Secs.*, 813 F.2d 1368, 1371 (9th Cir. 1987) (citing *Franchise Tax Bd. v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10, 103 S. Ct. 2841, 2846, 77 L. Ed. 2d 420 (1983)).  Accordingly, "[i]f a plaintiff has standing under...state rules, but lacks Article III standing against all defendants, the case is not removable." 16 GEORGE VAIRO, MOORE'S FEDERAL PRACTICE § 107.14[1], p. 107-61 (3d ed. 2013).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

**Tomy's Summary Judgment Motion**

Tomy now moves for summary dismissal on the theory that Murphy's letter, even though rejected by Bay and never approved by the Superior Court, "mooted" the case and destroyed the Court's jurisdiction under Article III, its express representation of federal subject matter jurisdiction notwithstanding.

The motion founders on several independent grounds.  First, as a matter of law, an unaccepted offer cannot moot a case, particularly a class action.  Second, even if this Court sat in the Seventh Circuit—the only circuit court to accept Tomy's mootness-by-unaccepted-offer theory—Tomy's tactic would fail because Tomy did not offer to provide all relief demanded in the complaint.  Third, even if Tomy had succeeded in destroying the Court's jurisdiction, the case would have to be remanded to state court, whose jurisdiction to resolve the case is unquestioned.

**Argument**

**I.    As a Matter of Law, Tomy's Unaccepted Settlement Offer Did Not Moot this Dispute**

The motion entirely depends on the proposition that Tomy's *unaccepted* settlement offer had "mooted" the case by the time Tomy removed it because there was no longer a live "case or controversy," as required by Article III.  The argument fails for two reasons.  First, an unaccepted settlement offer could not eliminate Bay's standing under Article III because it did not strip Bay of its individual stake in the outcome, and Bay still is required to prove Tomy's liability for illegal junk faxes to obtain relief.  (*See s*ubsection A, *infra*.)  Second, under Supreme Court and Ninth Circuit authority, Bay has an independent economic interest in certifying a class that

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-6-
SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

1  could not be extinguished even by actual settlement of Bay's individual claims, let

2  alone an unaccepted offer.  (*See* subsection B, *infra*.)

3

4  In subsection C we address the Supreme Court's recent decision in *Genesis*

5  *Healthcare Corporation v. Symczyk*, __U.S.__, 133 S. Ct. 1523, __L. Ed. 2d__

6  (2013), upon which Tomy heavily relies.  But as we demonstrate, *Genesis* not only

7  fails to support Tomy's position; it actually severely undermines it by stressing that a

8  damages claim remains live until settlement or judgment.

9

10  **A.     Tomy's Pick-Off Attempt Did Not Destroy Bay's Standing to Pursue**

11  **Bay's Individual Claims**

12

13  The basic principles are well settled.  As the Supreme Court explained earlier

14  this year, "Article III of the Constitution restricts the power of federal courts to 'Cases'

15  and 'Controversies...'"  *Chafin v. Chafin*, 568 U.S.__, 133 S. Ct. 1017, 1019, 185 L.

16  Ed. 2d 1 (2013) (quoting *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477, 110 S.

17  Ct. 1249, 108 L. Ed. 2d 400 (1990)).  "No case or controversy exists, and a suit

18  becomes moot, 'when the issues presented are no longer 'live' or the parties lack a

19  legally cognizable interest in the outcome.'"  *Id*. (quoting *Already, LLC v. Nike, Inc.*,

20  568 U.S.__, 133 S. Ct. 721, 726, 184 L. Ed. 2d 553 (2013)).  But a case "becomes

21  moot only when it is impossible for a court to grant any effectual relief whatever to

22  the prevailing party."  *Knox v. Service Employees*, 567 U.S.__, 132 S. Ct. 2277, 2287,

23  183 L. Ed. 2d 281 (2012); *accord*, *Chafin*, 133 S. Ct. at 1019.  "As long as the parties

24  have a concrete interest, however small, in the outcome of the litigation, the case is

25  not moot."  *Knox*, 132 S. Ct. at 2287.  And as the party asserting mootness, Tomy

26  "has a heavy burden to establish that there is no effective relief remaining for a court

27  to provide."  *In re Palmdale Hills Prop.*, 654 F.3d 868, 874 (9th Cir. 2011) (quoting

28  *Pintlar Corp.  v. Fidelity and Cas. Co.*, 124 F.3d 1310, 1312 (9th Cir. 1997)).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-7-                                    SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

Tomy does not dispute that Bay had standing when it commenced this litigation in the Orange County Superior Court.  Tomy insists, however, that its unaccepted—and judicially unapproved—settlement offer mooted the case because it "provided Plaintiff with all the relief it could possibly obtain were it to prevail in this action."  (Def.'s Mem. P. & A. Supp. Mot. Summ. J. at 4.)  The argument is factually flawed because as we demonstrate in section II, *infra*, the offer did not provide Bay anything, let alone the entire relief it had demanded.  But even assuming for sake of argument that Tomy had actually offered full relief, the offer did not strip Bay of its personal/individual stake in the outcome or render it impossible for the Court to grant relief—both of which are essential for a mootness finding.[6]

To see why, consider Bay's "concrete interest in the outcome" at the time of filing.  *Knox*, 132 S. Ct. at 2287.  As it pertained to Bay's individual claim—putting aside class-related relief for the moment—that interest was to prove that Tomy had sent illegal junk faxes, in order to recover damages and obtain injunctive relief.  *See* JFPA, § 227(b)(3).

Now consider whether that interest changed with the delivery of Murphy's letter.  Bay did not accept the offer and the Superior Court did not approve any settlement.  The offer's rejection "leaves the matter as if no offer had ever been made." *Minneapolis & St. Louis Ry. Co. v. Columbus Rolling Mill*, 119 U.S. 149, 151, 7 S. Ct. 168, 30 L. Ed. 376 (1886).  Bay's "concrete interest" remained exactly as it was before: to prove that Tomy's junk faxes violated the JFPA and FCC regulations.  As then-Associate Justice Rehnquist pointed out, because the named plaintiff is not obligated to accept the defendant's settlement offer, the plaintiff "is required to prove his case

---

[6]     Not surprisingly, Tomy does not cite the Supreme Court's recent mootness decisions, let alone demonstrate how an unaccepted offer can strip a plaintiff of a personal stake in the outcome under the Court's controlling standards.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

and the requisite Art. III adversity continues." *Deposity Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 341, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980) (Rehnquist, J., concurring).  There continues to exist between Bay and Tomy "that concrete adverseness which sharpens the presentation of issues." *Camreta v. Greene*, 563 U.S.__,__, 131 S. Ct. 2020, 2028, 179 L. Ed. 2d 1118 (2011).

Nor did the pick-off attempt impair this Court's power to "grant any effectual relief whatever to the prevailing party," *Knox*, 132 S. Ct. at 2287, let alone render it "impossible." *Id.*  If Bay proves that Tomy blasted illegal junk faxes, this Court retains full authority to award damages, to treble those damages based on a knowing or  willful violation, and to award injunctive relief.  Bay's injury can be "redressed by a favorable judicial decision." *Allen v. Wright*, 468 U.S. 737, 750-51, 104 S. Ct. 3315, 3324, 82 L. Ed. 2d 556 (1984).  An offer that was neither accepted by Bay nor approved by the Superior Court does not impede the Court's ability to grant relief.

Even if Bay had *accepted* Tomy's offer the case wouldn't have become moot. Under governing state rules, the parties would have been required to seek *and* obtain court approval of any settlement and dismissal.  *See* CAL. R. CT. 3.769(a), 3.770(a) (West 2013).  It is entirely conjectural whether the Superior Court would have approved any settlement.  And the Superior Court could have conditioned any approval upon the giving of notice to the class.  The parties *inter se* could have achieved nothing more than a tentative settlement, subject to judicial approval.  But "[w]here settlement is 'tentative,' the underlying dispute is not moot." *British Int'l Ins. Co. Ltd. v. Seguros La Republica, S.A.*, 354 F.3d 120, 123 (2d Cir. 2003) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 465 n.3, 98 S. Ct. 2454, 57 L. Ed. 2d 351 (1978)).  Put another way, Tomy did not have the power unilaterally to "moot" the case because further proceedings would have been inevitable.  (In any case Tomy foreclosed any possible Superior Court action by removing to federal court.)

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-9-                                    SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

### B.	Tomy's Pick-Off Attempt Did Not Defeat Bay's Standing Even if the Parties Had Settled Bay's Individual Claim

As discussed above, Tomy's pick-off offer did nothing to moot Bay's individual claims—those claims remained live and the requisite Article III adversity continued.  But even if the parties had *actually settled* Bay's individual claims and thereby mooted those claims, Bay would have retained an interest in obtaining the class relief sought in its complaint.  Controlling Supreme Court and Ninth Circuit authority establish that Bay's interest in obtaining class certification is sufficient by itself to satisfy Article III's "personal stake" requirement.

### 1.	Under *Roper* and *Geraghty* Bay has an independent interest in class certification

In two decisions released the same day, the Supreme Court recognized that the class representative's interest in obtaining class certification is a sufficient "personal stake" for Article III purposes notwithstanding the mootness of the representative's individual claims.  The first was *Deposity Guaranty National Bank v. Roper*.  There, the Court held that a named plaintiff has an individual interest in obtaining class relief that cannot be extinguished by resolution of the named plaintiff's individual claims.  This is true even when—unlike this case—a court enters judgment on the individual claims: "Neither the rejected tender nor the dismissal of the action over plaintiff's objections mooted the plaintiffs' claim on the merits so long as they retained an economic interest in class certification."  445 U.S. at 333.  That interest was "a continuing individual interest in the resolution of the class certification question in their desire to shift part of the costs of litigation to those who will share in its benefits if the class is certified and ultimately prevails."  *Id*. at 336.  As the Court explained, "[t]he use of the class-action procedure for litigation of individual

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

claims may offer substantial advantages for named plaintiffs; it may motivate them to bring cases that for economic reasons might not be brought otherwise...To deny the right to appeal simply because the defendant has sought to 'buy off' the individual private claims of the named plaintiffs would be contrary to sound judicial administration.  Requiring multiple plaintiffs to bring separate actions, which effectively could be 'picked off' by a defendant's tender of judgment before an affirmative ruling on class certification could be obtained, obviously would frustrate the objectives of class actions..." *Id.* at 339.

Roper was immediately followed by *Geraghty*.  *United States Parole Comm'n v. Geraghty*, 445 U.S. 388, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980).  Geraghty's individual injunctive relief claim had been mooted by Geraghty's release from prison.  The Court nevertheless held that the class action aspects of the case remained live for judicial resolution.  The Court explained that "a plaintiff who brings a class action presents two separate issues for judicial resolution.  One is the claim on the merits; *the other is the claim that he is entitled to represent the class*."  445 U.S. at 402 (emphasis supplied).  It follows that even after the named plaintiff's claim on the merits becomes moot, the class claim satisfies Article III: "We therefore hold that an action brought on behalf of a class does not become moot upon the expiration of the named plaintiff's substantive claim, even though class certification has been denied. The proposed representative retains a 'personal stake' in obtaining class certification sufficient to assure that Art. III values are not undermined."  *Id.* at 403-04.

The Ninth Circuit has adhered to *Geraghty's* holding "'that [a class] representative 'retains a "personal stake" in obtaining class certification sufficient' to maintain jurisdiction to appeal a denial of class certification."  *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1264 (9th Cir. 2010) (quoting *Geraghty*, 445 U.S. at 404).  This is because in that circumstance, "the class representative maintain[s] at

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-11-

SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

1  least an interest in spreading litigation costs and shifting fees and expenses to other

2  litigants with similar claims." *Id*. (quoting *Geraghty*, 445 U.S. at 334 n.6).  This

3  independent interest by itself is sufficient to preserve the named plaintiff's standing,

4  even when the plaintiff *actually settles* his individual claims.  *Id.* at 1264.

6  Here, Bay expressly alleged an interest in spreading its costs and attorneys'

7  fees "among the members of the Plaintiff Class in relation to the benefits received by

8  the Plaintiff Class."  (Compl. p. 15.)  This interest defeats mootness under *Roper* and

9  *Geraghty*.

## 2.   Tomy's pick-off attempt did not extinguish Bay's independent interest in class certification

14  The idea of attempting to avoid class-wide accountability by picking off the

15  named plaintiff did not originate with Tomy's lawyers.  Numerous other class

16  defendants have attempted the tactic—and failed.  With one exception, all federal

17  circuits have followed *Roper* and *Geraghty* and recognized that the named plaintiff

18  retains standing to pursue class certification despite the defendant's pick-off attempt.

19  *See Russell v. United States*, 661 F.3d 1371, 1374-75 (Fed. Cir. 2011); *Lucero v.*

20  *Bureau of Collection Recovery, Inc.*, 639 F.3d 1239, 1249-50 (10th Cir. 2011); *Weiss*

21  *v. Regal Collections*, 385 F.3d 337, 343-46 (3d Cir. 2004).  And Judge Gee of this

22  district followed *Roper* and *Geraghty,* holding in a *TCPA case* that a defendant can't

23  "make an end-run around a class action simply by virtue of a facile procedural

24  'gotcha'" embedded in a rule 68 offer.  *Gomez v. Campbell-Ewald Co.*, 805 F. Supp.

25  2d 923, 930 (C.D. Cal. 2011).

27  Two years ago the Ninth Circuit in *Pitts* joined this super-majority.  *See Pitts v.*

28  *Terrible Herbst, Inc.*, 653 F.3d 1081, 1091-92 (9th Cir. 2011).  There, the court held

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-12-
SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

that "an unaccepted Rule 68 offer of judgment—for the full amount of the named plaintiff's individual claim and made before the named plaintiff files a motion for class certification—does not moot a class action." *Id.* The court stressed that *Roper* had rejected the tactic of attempting to "'buy off' the individual private claims of the named plaintiffs' before the named plaintiffs" have a chance to file a motion for class certification would thus contravene Rule 23's core concern: the aggregation of similar, small, but otherwise doomed claims." 653 F.3d at 1091 (quoting 445 U.S. at 339).[7]

*Roper*, *Geraghty* and *Pitts* are controlling here, and require rejection of Tomy's pick-off tactic to avoid accountability to the class. This class case would not be mooted even if Tomy had offered—and Bay had actually received—full relief on Bay's individual claims. Even then, Bay would retain an independent interest in obtaining class certification. Numerous courts after *Pitts* have come to this exact conclusion (all ignored by Tomy). *See Russell*, 661 F.3d at 1376-77 (following *Pitts*); *Schmidt v. Red Rock Fin. Servs., LLC*, No. 2:12-CV-1773JCM, 2013 WL 1501481, at *3 (D. Nev. April 10, 2013) (following *Pitts* and rejecting *Damasco, infra*); *Ramirez v.*

---

[7]    Tomy cites two pre-*Pitts* cases that have nothing to do with a defendant's attempt to moot a class action with a pick-off offer. (*See* Def.'s Mem. P. & A. Supp. Mot. Summ. J. at 5.) Other district courts in this circuit have not followed these cases in an attempted pick-off situation; nor should this one. The first cited case is *Vun Cannon v. Breed*, 565 F.2d 1096 (9th Cir. 1977). In that case the plaintiff lacked standing when litigation commenced because he was no longer at the correctional facility whose assignment he challenged. *Id.* at 1098. The court also held "that an improperly or non-certified class cannot succeed to the adversary position formerly occupied by a no-longer-aggrieved representative plaintiff whose own claim has become moot." *Id.* But this holding conflicts with, and no longer survives, *Geraghty* issued three years later.

    The second case involved a plaintiff who had *never* suffered any actual injury. The plaintiff complained of the failure to receive an installation permit, when in fact defendant had obtained it before the litigation was filed. *See Stanford v. Home Depot USA*, No. 07cv2193-LAB, 2008 WL 7348181 (S.D. Cal. May 27, 2008). The court ruled that "[i]f the named putative class representative lacked standing *at the inception of the action*, the complaint cannot be saved on the required element of adequacy of representation because the 'case or controversy' requirement of Article III was not satisfied with respect to that plaintiff from the outset." *Id.* at *7 (emphasis supplied). Not even Tomy contends that Bay lacked standing at the outset of litigation.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1   *Trans Union, LLC*, No. 3:12-cv-00632 JSC, 2013 WL 1089748, at *3-4 (N.D. Cal.

2   March 15, 2013) ("*Pitts* Disposes of Defendant's Motion"); *see also Frazier v. Castle*

3   *Ford, Ltd.*, 430 Md. 144, 160, 59 A.3d 1016 (2013) (*Pitts* is "the better rule").[8]

4

5       Tomy simply ignores the numerous decisions from this and other circuits that

6   have disallowed its pick-off trick and instead seizes on a decision from the Seventh

7   Circuit, the only circuit that has permitted the tactic after *Roper* and *Geraghty*.  In

8   *Damasco*, the Seventh Circuit held that if a class defendant offers to satisfy the

9   plaintiff's entire demand, there is no remaining dispute over which to litigate and the

10  plaintiff loses his stake.  *Damasco v. Clearwire Corp.*, 662 F.3d 891, 895 (7th Cir.

11  2011).  The court admitted that its holding was a minority one and directly contrary to

12  holdings of four other circuits, including the Ninth Circuit in *Pitts*.  *Id*. at 895-96.

13

14      Tomy's reliance on *Damasco* fails for several reasons.  The first is obvious—

15  this Court is bound by Ninth Circuit authority, which even the Seventh Circuit

16  concedes is directly contrary to its *Damasco* holding.  As Judge Mahan ruled last

17  month, "four circuits, including the Ninth Circuit, have not followed the *Damasco*

18  court's interpretation.  Therefore, because the Ninth Circuit's decision in *Pitts* binds

19  the court, this court does not find this case moot..." *Schmidt*, 2013 WL 1501481, at *3.

20

21      Second, even if the Ninth Circuit had not definitively disallowed early pick-off

22  attempts, *Damasco* would be unpersuasive because it is directly contrary to *Roper* and

23  _____

24      [8]    Tomy attempts to distinguish *Pitts* by asserting that it is limited to rule 68

25  offers.  (Def.'s Mem. P. & A. Supp. Mot. Summ. J. at 9 (citing *Brandon v. National RR. Passenger Corp. Amtrak*, No. CV 12-5796, 2013 WL 800265 (C.D. Cal. March 1,

26  2013)).  Although *Pitts* involved a rule 68 offer, nothing in the court's words or reasoning is limited to that context.  Moreover, the pivotal fact in *Brandon* was that

27  the plaintiff had blown the class certification motion deadline.  (In contrast, the Court's November 6, 2012, order provides that the deadline for Bay's class certification

28  motion will be set in the future.  (Dkt. 23.))

-14-                                        SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

*Geraghty*.  In those cases, the Supreme Court recognized that named plaintiff retains an *independent interest* in class certification even after his individual claim becomes moot, and that this independent interest satisfies Article III's "personal stake" requirement.  *See Roper,* 445 U.S. at 339-340; *Geraghty*, 445 U.S. at 404.  In its decision, the Seventh Circuit ignored both holdings and mentioned *Roper* and *Geraghty* only in passing.  662 F.3d at 895.  But the decision's disregard of the class representative's economic interest in obtaining certification cannot be reconciled with the Supreme Court's express recognition that such interest is a sufficient "personal stake" for Article III purposes.  That is why the Seventh Circuit stands alone among all circuit courts in permitting a class defendant to pick off the named plaintiff.

Third, even the Seventh Circuit would recognize the named plaintiff's interest in certification if the named plaintiff moves for certification before the defendant makes a pick-off attempt.  662 F.3d at 896.  But this distinction, and the first-strike strategy it sets up, make no sense.  The named plaintiff has the same interest in certification at the outset as he does after filing the motion—sharing the fees and costs of class litigation with others.  Nor is a motion relevant in any logical sense to whether the plaintiff has a stake in the controversy.  After all, when the plaintiff commences litigation the controversy is "live" by virtue of the relief sought in the complaint, even though the plaintiff has yet to file any motion.  As the Tenth Circuit points out, "[w]e find no authority on which to distinguish the case in which a class certification motion is pending or filed within the duration of the offer of judgment from our case: any Article III interest a class may or may not have in a case is or is not present from its inception."  *Lucero*, 639 F.3d at 1250.[9]

---

[9]   As one court pointed out in rejecting a pick-off attempt, "[t]aken to its absurd logical conclusion, the policy urged by defendant would clearly hamper the
(footnote continued)

SACV12-1710 DOC (ANx)

Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

## C.   *Genesis* Is Inapposite

To support its contention that an unaccepted settlement offer moots a named plaintiff's claims, Tomy relies heavily on last month's Supreme Court decision in *Genesis*.  Tomy argues at great length that *Genesis*, even though not a class action, "overrules or undermines *Pitts* and demonstrates that Plaintiff's claims are not inherently transitory."  (Def.'s Mem. P. & A. Supp. Mot. Summ. J. at 6.)  This is an imaginative, "*Through The Looking-Glass"* interpretation.  *Genesis* did not decide the mootness issue *at all* because the plaintiff had conceded and waived the issue.  The Court also stressed that Article III standing principles governing class actions did not apply in actions brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq*.  And the Court did not mention *Pitts*, let alone "overrule" that decision.

In *Genesis*, the Court considered whether a *non-class action* brought under the FLSA "is justiciable when the lone plaintiff's individual claim becomes moot."  133 S. Ct. at 1526.  The Court determined that the claim is not justiciable.  *Id*.  The Court did not, however, opine that an unaccepted settlement offer causes an individual claim to *become moot*.  The Court did "not reach this question" because the respondent failed to cross-petition on the issue and, for good measure, had expressly waived the issue. *Id*. at 1529.  The Court therefore "assume[d], *without deciding*, that petitioners' Rule 68 offer mooted respondent's individual claim."  *Id*. (emphasis supplied).

---

administration of justice, by forcing a plaintiff to make a class certification motion before the record for such motion is complete—indeed before an Answer is filed—would result in sweeping changes to accepted norms of civil litigation in the Federal Courts."  *Schaake v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 108, 112 (S.D.N.Y. 2001).  It would be equally untenable in the state court forum.  California courts do not permit the plaintiff to move for class certification motion until both sides have the opportunity to conduct discovery.  *Stern v. Superior Court*, 105 Cal. App. 4th 223, 232-33, 129 Cal. Rptr. 2d 275 (2003).

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

In other words, the Court did not touch—let alone overturn—its recent precedents establishing when an individual case becomes moot, and when it doesn't. *Chafin*, *Knox* and *Already*—all decided within the past twelve months—remain good law.[10]  (*See* p. 7, *supra*.)

Nor did the Court disturb in any way its *class action* precedents that recognize the class representative's independent interest in class certification.  The Court noted its *Roper* holding that in a class action, even after their individual claims are satisfied, "the named plaintiffs possessed an ongoing, personal economic stake in the substantive controversy—namely, to shift a portion of attorney's fees and expenses to successful class litigants."  133 S. Ct. at 1532 (citing *Roper*, 445 U.S. at 332-34 & n.6).  In *Genesis*, however, that principle didn't apply for two reasons.  First, the "respondent conceded that petitioner's offer 'provided complete relief on her individual claims...  and she failed to assert any continuing economic interest in shifting  attorney's fees and costs to others."  *Id.*  Second, FLSA cases are not governed by class action mootness principles established in *Roper* and *Geraghty* "because Rule 23 actions are fundamentally different from collective actions under the FLSA."  133 S. Ct. at 1529; *see also id*. at 1532 ("'conditional certification'...in § 216(b) proceedings...is not tantamount to class certification under Rule 23").  In other words, the *Roper* and *Geraghty* holdings that a named plaintiff has an independent interest in class certification remain fully intact.

---

[10]     Given the plaintiff's concessions and waivers, Justice Kagan in her dissent called the majority decision "the most one-off of one-offs…Feel free to relegate the majority's decision to the further reaches of your mind: The situation it addresses should never again arise." 133 S. Ct. at 1533 (Kagan, J., dissenting).  The majority didn't challenge these observations.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

1    Tomy, ever panning for gold in a tapped-out stream, insists that *Genesis*

2  "explicitly rejected the conclusion reached by the Ninth Circuit in *Pitts*—that a claim

3  became inherently transitory where it is subject to being 'picked-off' by a defendant

4  making offers of judgment or settlement offers to plaintiffs."  (Def.'s Mem. P. & A.

5  Supp. Mot. Summ. J. at 8.)  First, this is a straw man, fabricated only by distorting

6  *Pitts*.  The Ninth Circuit did *not* conclude that a claim "became" inherently transitory

7  when it was subject to pick-off; it held that "where...a defendant seeks to 'buy off' the

8  small individual claims of the named plaintiffs, the analogous claims of the class—

9  though not *inherently* transitory—became no less transitory than inherently transitory

10  claims."  653 F.3d at 1091 (original emphasis).  And Tomy's reliance on this part of

11  *Genesis* is more than a little ironic, because the reason why a damages claim is not

12  "inherently transitory" destroys Tomy's mootness theory.  As the Court put the matter,

13  a "damages claim...*remains live* until it is settled [or] judicially resolved..."   133 S. Ct.

14  at 1531 (emphasis supplied).  A live claim is the antithesis of a moot claim.  *See*

15  *Powell v. McCormack*, 395 U.S. 486, 496 & n.7, 89 S. Ct. 1944, 23 L. Ed. 2d 491

16  (1969).

17

18    Second, the Court made clear that an FLSA case was not governed by its *class*

19  *action* precedents, not only because class actions were "fundamentally different"

20  from FLSA actions, 133 S. Ct. at 1532, but also because the *Genesis* plaintiff did not

21  claim an economic interest in shifting her attorneys' fees to others.[11] *Id.*

22

23

24

_____

25    [11]    To imply a greater relevance to *Genesis*, Tomy repeatedly
mischaracterizes  *Pitts* as an FLSA case.  (Def.'s Mem. P. & A. Supp. Mot. Summ. J.
26  at 5-6.)  When decided by the Ninth Circuit, *Pitts* was *not* an FLSA case.  Although
initially filed  both as a class action and an FLSA collective action, Pitts abandoned
27  the FLSA claims on appeal.  653 F.3d at 1093-94.

28

-18-                                   SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

## II.    Tomy's Pick-Off Attempt Fails Because Tomy's "Offer" Was Incomplete and Ineffective

Even if Tomy's mootness-by-unaccepted-offer trick were theoretically viable, Tomy's pick-off attempt would fail.  Tomy's unaccepted offer fell well short of fully satisfying Bay's demands, a Seventh Circuit requirement.  *Damasco* held that the offer must satisfy the plaintiff's entire demand: "'Once the defendant offers to satisfy the plaintiff's *entire demand*, there is no dispute over which to litigate.'"  662 F.3d at 895 (emphasis supplied).[12]

When measured against this standard, Tomy's "offer" falls short of the relief demanded by Bay.  Indeed, Tomy offered Bay *nothing* in settlement; instead its offer was merely an invitation for Bay to engage in further litigation.[13]

•    *No Unconditional Offer of Payment*:  Tomy did not commit to pay any outright sum certain to Bay.  Instead, it attached two conditions to payment, both of which required further litigation.  First, Tomy offered to pay only for facsimile *advertisements*.  (Def.'s Ex. 1.)  This is an element of a TCPA claim that must be

---

[12]    Using any lesser standard, including Tomy's what a plaintiff "could possibly obtain were it to prevail," merely invites further litigation.  For the same reasons Tomy also cannot rely on its so-called "catch-all" offers in its lawyer's letter, *e.g.*, Tomy "agrees to provide Plaintiff with whatever additional relief is required to satisfy its individual claims against TOMY."  (Ex. 1, p. 1.)  The analysis simply ends if Tomy didn't expressly offer to provide all relief demanded in the complaint.  Tomy's allusions to "additional relief" are worthless on their face, particularly so when it doesn't even mention how, when and by whom this "additional relief" will be determined or given.

[13]    Under California law, in order to be binding if accepted, an offer must be sufficiently definite to enable courts to give it an exact meaning.  A court must be able to ascertain the parties' obligations and to determine whether those obligations have been performed or breached.  *Weddington Prods., Inc. v. Flick*, 60 Cal. App. 4th 793, 810-811, 71 Cal. Rptr. 2d 265 (1998) (applying contract principles to settlement agreement).  Therefore, all ambiguities and vagueness in Tomy's lawyer's letter must be construed against Tomy.

Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

pleaded and proved by the plaintiff.  *See* § 227(a)(5), (b)(1)(B).  To realize anything from Tomy's "offer," Bay would have to establish how many fax advertisements Tomy sent.  Tomy did not state in its lawyer's letter how many faxes it sent Bay, or how many of those were advertisements subject to the JFPA.  This information remained in Tomy's sole possession.  Second, Tomy offered to pay only for fax ads *that violate* the TCPA.  (Def.'s Ex. 1.)  For Bay to actually receive anything, therefore, it would have had to conduct discovery, then prove that Tomy's ads violated the statute—the antithesis of a settlement that conclusively ends litigation.[14]

Tomy's "offer" falls short of the offer made in *Damasco*.  There the defendant made an *unconditional* offer of $1,500 for each text *received*, not for each *advertising* text that was sent in *violation* of the TCPA.[15]  *See* 662 F.3d at 893.  Tomy's offer was conditional on two separate future litigation determinations.

• **No Injunctive Relief:**  Tomy did not agree to *any* of the injunctive relief demanded by Bay.  At most Tomy agreed to stop sending junk faxes to *Bay*, even though Bay demanded an injunction that Tomy stop from sending them to *anyone*.  (*See* Ex. 1, p. 1.)  And Tomy failed to agree to the other four items of injunctive relief sought in the complaint, namely, requiring Tomy to (1) deliver all records of facsimile advertisements; (2) conduct JFPA training and monitoring programs; (3) provide

_____

[14]    Tomy's offer also fell short in another respect.  Tomy offered to pay only with respect to fax ads that violate the statute itself.  But Bay also seeks damages for Tomy's violations of FCC regulations, which are independently actionable.  *See* § 227(b)(3); (*see* Compl. ¶¶ 22, 26 and Prayer for Relief ¶ 4.)  Tomy offered nothing for its violations of FCC regulations.

[15]    The Supreme Court's *Havens Realty* decision casts doubt on whether anything less than an unconditional offer of a sum certain is sufficient.  *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 371, 102 S. Ct. 1114, 1120, 71 L. Ed. 2d 214 (1982).  The Court rejected the notion a claim became moot merely because the parties agree on a measure of damages:  "If respondents have suffered an injury that is compensable in money damages of some undetermined amount, the fact that they have settled on a measure of damages does not make their claims moot."  455 U.S. at 371.

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

written notice to all junk fax recipients; and (4) provide warnings on its website. (Compl. p. 15.)  Indeed, all four items were entirely ignored by Tomy.[16]  By comparison, the defendant in *Damasco* unqualifiedly "agreed to the injunctive relief sought by Plaintiff."  *Damasco v. Clearwire Corp.,* No. 10 CV 3063, 2010 WL 3522950, at *1 (N.D. Ill. Sept. 2, 2010).

• **No Offer of Judgment:**  Tomy made no offer of judgment. (Zimmermann Decl. ¶ 3.)  A settlement offer, even if purporting to offer full relief, will not moot the case if it does not include an offer of judgment.  *Zinni v. ER Solutions, Inc.*, 692 F.3d 1162, 1167-68 (11th Cir. 2012) (FDCPA); *Simmons v. United Mortgage & Loan, LLC*, 634 F.3d 754, 765 (4th Cir. 2011) (FLSA).  As aptly explained in *Simmons*:

> "From the view of the Plaintiff, a judgment in their favor is
> far preferable to a contractual promise by the Defendant in
> a settlement agreement to pay the same amount.  This is
> because district courts have inherent power to compel
> defendants to satisfy judgments entered against them, but
> the lack of power to enforce the terms of a settlement
> agreement absent jurisdiction over a breach of contract
> action for failure to compel with the settlement agreement."
> *Id.*, citations omitted.

• **No Judicial Approval/No Consideration:** Tomy's mantra that Murphy's letter "provided" Bay with "all the relief it could possibly obtain" is demonstrably

---

[16]     Tomy said it would also agree to "any other injunctive relief which Plaintiff individually could obtain against TOMY in the Lawsuit."  This does nothing but invite further litigation whether Bay was entitled to this "other injunctive relief."

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

false.  Bay received nothing.  Before any consideration could actually flow to Bay, the Superior Court was required to approve any settlement.  *See* CAL. R. CT. 3.769(a), 3.770(a) (West 2013).  The Superior Court never did; indeed, Tomy never even sought approval.  Accordingly, nothing of value was exchanged between Tomy and Bay and no consideration whatsoever supports any supposed settlement.

**III.     Even if Tomy Had Eliminated the Court's Jurisdiction With an Unaccepted Pick-Off Offer, There Would Be No Legal Basis for Dismissal**

Even if we indulge the incorrect assumption that Tomy's pick-off attempt succeeded in destroying federal court jurisdiction before Tomy removed, there would be no basis for dismissal.  Rather, the case must be remanded to the Orange County Superior Court.  This is dictated by the remand statute, 28 U.S.C. § 1447(c):

> If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case *shall be* remanded.  (emphasis supplied.)

The statute's plain words "give…no discretion to dismiss rather than remand an action." *International Primate Prot. League v. Administrators of Tulane Educ. Found.*, 500 U.S. 72, 89, 111 S. Ct. 1700, 114 L. Ed. 2d 134 (1991) (quoting *Maine Ass'n of Interdependent Neighborhoods v. Commissioner*, 876 F.2d 1051, 1054 (1st Cir. 1989)).  As the Supreme Court stressed, "The statute declares that, where subject matter jurisdiction is lacking, the removed case '*shall* be remanded.'" *Id.* (original emphasis); *see also University of S. Ala. v. American Tobacco Co.,* 168 F.3d 405, 410 (11th Cir. 1999) ("this provision is mandatory"); *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 213 (3d Cir. 1997) ("once the federal court determines that it lacks jurisdiction, it must remand the case back to the appropriate state court").

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-22-

SACV12-1710 DOC (ANx)

The statute permits no exception when the lack of jurisdiction is attributable to a standing defect under Article III.  In the seminal *Maine Association* decision, Justice Breyer, then writing for the First Circuit, opined that because lack of standing is a jurisdictional defect, the remand statute's plain words control and the case must be remanded to state court.  876 F.2d at 1054.  Two years later the Supreme Court adopted Justice Breyer's reasoning in *International Primate Protection*.  500 U.S. at 88-89.  As the Court explained, "If removal was improper, the case must be remanded to state court, where the requirements of Article III plainly will not apply."  *Id.* at 78 n.4.

Numerous lower courts, including the Central District, have followed the statutory command and ordered remand when the lack of an Article III case or controversy deprived the federal court of jurisdiction.  *See, e.g., Coyne ex rel. Ohio v. American Tobacco Co.,* 183 F.3d 488, 496 (6th Cir. 1999); *Wheeler v. Travelers Ins. Co.,* 22 F.3d 534, 540 (3d Cir. 1994) (lack of standing does not extinguish case but "requires remand"); *Doe v. Match.com,* 789 F. Supp. 2d 1197, 1199 n.4 (C.D. Cal. 2011) (Wilson, D.J.); *Mirto v. American Int'l Group, Inc.*, No. C-04-4998, 2005 WL 827093, at *2-3 (N.D. Cal. April 8, 2005); *Boyle v. MTV Networks*, 766 F. Supp. 809, 817-18 (N.D. Cal. 1991) (court "must remand" if standing absent); *Langford v. Gates*, 610 F. Supp. 120, 122-23 (C.D. Cal. 1985) (Tashima, D.J.).

It also makes eminent good sense to return a case to a state court with jurisdiction.  The Superior Court is not bound by Article III's "case or controversy" requirement.  *International Primate Protection*, 500 U.S. at 79 n.4; *see also Los Angeles v. Lyons*, 461 U.S. 95, 113, 103 S. Ct. 1660, 75 L. Ed. 2d 675 (1983) ("[T]he state courts need not impose the same standing or remedial requirements that govern federal court proceedings").  Nor does the presence of a federal claim change anything.  The Supreme Court has repeatedly held that "the constraints of Article III

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

-23-

SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment

1   do not apply to state courts, and accordingly the state courts are not bound by the

2   limitations of a case or controversy or other federal rules of justiciability, *even when*

3   *they address issues of federal law*…as when they are called upon to interpret... a

4   federal statute." *ASARCO, Inc. v. Kadish*, 490 U.S. 605, 617, 109 S. Ct. 2037, 104 L.

5   Ed. 2d 696  (1989) (emphasis supplied; citing precedents).

6

7          Nor is there any serious question about Bay's standing to pursue the case in

8   state court.  California law does not permit Tomy to escape legal responsibility to the

9   class by a pick-off attempt.  Even an *accepted* settlement offer would not have

10  mooted the case.  As the California Supreme Court explained, "[w]hen a plaintiff

11  sues on behalf of a class, he assumes a fiduciary obligation to the members of the

12  class, surrendering any right to compromise the group action in return for individual

13  gain.  Even if the named plaintiff receives all the benefits that he seeks in the

14  complaint, such success does not divest him of the duty to continue the action for the

15  benefit of others similarly situated." *La Sala v. American Savs. & Loan Ass'n*, 5 Cal.

16  3d 864, 871, 97 Cal. Rptr. 849 (1971).  California law therefore "prevents a

17  prospective defendant from avoiding a class action by 'picking off' prospective class-

18  action plaintiffs one-by-one, settling each individual claim in an attempt to disqualify

19  the named plaintiff as class representative." *Larner v. Los Angeles Doctors Hosp.*

20  *Assocs., LP,* 168 Cal. App. 4th 1291, 1299, 86 Cal. Rptr. 3d 324 (2008); *see also*

21  *Wallace v. Geico Gen. Ins. Co.,* 183 Cal. App. 4th 1390, 1398-99, 108 Cal. Rptr. 3d

22  375 (2010); *Watkins v. Wachovia Corp.,* 172 Cal. App. 4th 1576, 1590, 92 Cal. Rptr.

23  3d 409 (2009).[17]

24

25

26          [17]    The fact that California law does not permit a class defendant to pick off
27  the named plaintiff further distinguishes *Damasco*, because Illinois law permits the
    tactic.  *See* 662 F.3d at 895.
28

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

Contrast the logic of returning an improperly removed case to state court with the absurd procedural cycle advocated by Tomy.  If Tomy's tactic were permitted, a defendant could wrest a case from a state court having unquestioned authority to entertain the suit, falsely assert federal jurisdiction in its removal notice, then obtain dismissal on the ground that its prior invocation of federal jurisdiction was wrong.  Then, after the plaintiff re-filed in state court, the defendant would repeat the tactic.  "Like Sisyphus, condemned to roll a heavy rock up a hill only to have it roll back down just before he reaches the top, these plaintiffs would never see a resolution on the merits."  *Mirto,* 2005 WL 827093, at *2.  The plain command of section 1447(c) forbids Tomy's procedural gamesmanship.

### Conclusion

Using what Judge Gee aptly described as a "facile procedural gotcha" to avoid legal accountability to the class works only in the Seventh Circuit.  It is contrary to the Supreme Court's recent decisions establishing strict standards for "mootness."  It is contrary to *Roper* and *Geraghty* and the holdings of every other circuit, including the Ninth, to consider the matter.  And it is flatly inconsistent with the remand statute, and controlling Supreme Court decisions, both of which direct a remand to state court of any case in which the plaintiff lacks standing.  Tomy's motion should be denied.

Dated: May 28, 2013

Law Offices of Scott Z. Zimmermann and
Payne & Fears  LLP

By: _____ /s/ C. Darryl Cordero _____
C. Darryl Cordero
Attorneys for Plaintiff Craftwood II, Inc.,
dba Bay Hardware and for all others
similarly situated

PAYNE & FEARS LLP
ATTORNEYS AT LAW
801 S. FIGUEROA STREET, SUITE 1150
LOS ANGELES, CALIFORNIA 90017
(213) 439-9911

4842-5034-7027.17

-25-

SACV12-1710 DOC (ANx)
Plaintiff's Memorandum of Points and Authorities in Opposition to
Defendant Tomy International, Inc.'s Renewed Motion for Summary Judgment